J. WALTER THOMPSON COMPANY, Respondent, *v.* WALTER WINCHELL, Defendant, Impleaded with FLETCHER & ELLIS, INC., and Another, Appellants.

First Department, April 12, 1935.

*Louis Steckler* of counsel [*Steckler, Frank & Steckler*, attorneys], for the appellants.

*William L. Hanaway* of counsel [*Breed, Abbott & Morgan*, attorneys], for the respondent.

MARTIN, P. J. The corporate defendants appeal from an order granting an injunction *pendente lite* in an action to enjoin performance of a contract covering the services of the defendant Walter Winchell.

The defendant Winchell on May 21, 1934, entered into a contract with the plaintiff, respondent, by the terms of which he agreed to give his exclusive radio services (both commercial and sustaining) to the Andrew Jergens radio program, which is broadcast Sunday evenings from nine-thirty to nine-forty-five, with a rebroadcast from eleven-fifteen to eleven-thirty, from the studios of the National Broadcasting Company in New York. The contract is for thirty-nine weeks beginning September 2, 1934, and ending May 26, 1935, but it could be terminated by plaintiff, respondent, at any time upon payment to Winchell of four weeks' salary. Defendant Winchell agreed therein not to perform on any other radio programs from the date of the contract to the last broadcast thereunder; he granted to plaintiff, respondent, and the Andrew Jergens Company the right to use his name and likeness in any proper way in connection with the advertising of and the giving of publicity to the

Jergens radio program; it was understood that his name and photograph would not be used in the advertising of any other product except with the express permission of the plaintiff, respondent. Defendant Winchell entered upon the performance of the contract and the same is now in full force and effect.

The appellant Fletcher & Ellis, Inc., as advertising agents for the defendant, appellant, Gooderham & Worts, Ltd., entered into a contract with the defendant Winchell, dated January 29, 1935, under which Winchell, for the sum of $5,000 paid in advance, agreed to " permit Gooderham & Worts, Ltd., and/or their authorized agents, to use my name and photograph in a series of advertisements not to exceed thirteen (13) in number, in such key cities of the United States and Canada, and in such media, exclusive of radio, as Gooderham & Worts may determine."

This agreement became effective February 15, 1935, and is to continue to August 15, 1935. Defendant Winchell reserved the right to approve all copy appearing under his name and agreed not to allow his name, photograph or his indorsement in any manner whatsoever to be used in the advertising of any alcoholic beverage not manufactured or distributed by Gooderham & Worts, Ltd. Defendant, appellant, Fletcher & Ellis, Inc., proceeded to carry the contract into effect and advertising copy was submitted to Winchell and approved by him. During the negotiations leading up to the contract, Winchell was asked about his right to contract, and stated he was free to do as he liked with regard to additional advertising contracts.

On February 14, 1935, sixteen days after the execution of the contract between Winchell and the appellant Fletcher & Ellis, Inc., the latter was informed over the telephone that the respondent had an exclusive contract with Winchell which would be violated by performance in whole or in part of the contract with Fletcher & Ellis, Inc. Although a copy of the respondent's contract was requested of the telephone informant, appellant was not furnished with it. On February 19, 1935, appellant Fletcher & Ellis, Inc., received from respondent a letter in which respondent took the position that the contract of January 29, 1935, between appellant Fletcher & Ellis, Inc., and Winchell violated respondent's contract with the latter. This letter was received, however, after publication in thirty-one newspapers throughout the United States of the first series of advertisements of appellant Gooderham & Worts, Ltd., prepared by Fletcher & Ellis, Inc., and containing Winchell's photograph and name in large letters.

Meanwhile, and under date of February 15, 1935, Winchell had notified the representative of appellant Fletcher & Ellis, Inc., that

owing to previous contract with respondent he had to withdraw permission to use his name in connection with appellant's Gooderham & Worts, Ltd., product, and at the same time returned the check for $5,000, which he had received at the time of the signing of the contract with the appellant Fletcher & Ellis, Inc. The offer to return the check was promptly rejected by the latter.

The two contracts here involved contemplate the employment of Winchell's services in advertising. The nature of the services, the classification of the articles to be advertised and the medium to be used are readily distinguishable. The respondent's broadcasts are devoted in their entirety to items of gossip and of so-called " inside news " for the dispensing of which Winchell has developed a reputation. The appellants' advertisements are limited to a few lines under Winchell's name and picture about hotels, restaurants and night clubs, as to the quality of their food, entertainment and music. (He does not indorse any product of the appellant Gooderham & Worts, Ltd.) The article advertised under respondent's contract is a skin lotion and the articles advertised under appellants' contract are whiskies and gin. Respondent's contracts cover the uses of the radio for advertising and appellants' cover newspaper publications. It is clear that this is not the usual case of an employment contract where an employee performs the same service or services of substantially a similar nature for two different persons. It is not clear that performance of appellants' contract will hinder, conflict with or detract from respondent's contract.

An examination of respondent's contract indicates that it was contemplated that Winchell's name and photograph might be used in types of advertising other than radio. It contains the following provision: " It is also understood that your name and/or photograph will not be used in the advertising of any other product except with the express permission of the J. Walter Thompson Company."

Had the respondent negotiated the contract for the advertising of the products of the appellant Gooderham & Worts, Ltd., it is obvious that no one could have objected to the arrangement.

The complaint contains no allegation of knowledge or bad faith on the part of either of the appellants. They may not be held liable for interference with the performance of respondent's contract in the absence of a showing of facts from which it may be inferred that they fraudulently, tortiously or wrongfully induced a breach of the contract. (*Goodman Bros., Inc.,* v. *Ashton,* 211 App. Div. 769.)

The respondent has not shown it will suffer irreparable damage so as to support a preliminary injunction. It is argued that if

Winchell could contract with appellants with impunity he could do so with twenty others, thus making it appear that his services were not unique or unusual but were of little or no value, which is utterly contrary to the state of facts which existed when the contract was entered into between plaintiff and Winchell. But, as has been pointed out, Winchell does not indorse any product in connection with the appellant's contract and the use of his name and photograph does not imply an indorsement, in accordance with the terms of the contract. The situation here presented differs from one where there is destruction of the value of a name through promiscuous indorsement.

The respondent is an advertising agency and its contract with Winchell was entered into by it as principal; the interest of respondent in the contract is in the profit it will receive from its client, the Andrew Jergens Company, and the damage to it, should the Jergens Company see fit to terminate the contract, can readily be ascertained and computed. The respondent has an adequate remedy at law against Winchell for any damage it may sustain.

The order granting the injunction *pendente lite* should be reversed, with twenty dollars costs and disbursements, and the application for injunction denied, with ten dollars costs.

McAVOY, O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion denied, with ten dollars costs.