Roulette Records, Inc., Respondent, *v.* Princess Production Corporation et al., Appellants, et al., Defendants.

First Department, February 8, 1962.

*Stanley Rothenberg* of counsel (*Albert Heit* and *Harry W. Jacobs* with him on the brief; *Margulies & Heit,* attorneys), for appellants.

*Irving Lemov* (*A. Halsey Cowan* with him on the brief), for respondent.

McNALLY, J. Defendants-appellants, Princess Production Corporation and Burt Balaban, appeal from the judgment entered December 20, 1960 enjoining them from producing and selling phonograph records of the vocalist Sarah Vaughan, reproduced from the sound track of the motion picture entitled "Murder, Inc.", and awarding plaintiff damages in the sum of $8,600.

The first cause of action is directed against defendant Sarah Vaughan and alleges that on July 24, 1959 a contract was made between plaintiff and said defendant providing for her recordings of phonograph records exclusively for the plaintiff during the term of three years commencing April 1, 1960, and further providing that during the period of five years after the expiration of the contract the said defendant will not " perform " any material recorded for the plaintiff.

The second cause of action is directed against the appellants and other defendants and alleges that the appellants licensed the manufacture and distribution of phonograph records of two

musical numbers entitled "The Awakening" and "Fan My Brow" reproduced from the original sound track of the motion picture "Murder, Inc." rendered by the defendant Sarah Vaughan, with knowledge on the part of the appellants of plaintiff's rights under its contract with Sarah Vaughan dated July 24, 1959.

In opposition to plaintiff's motion for a preliminary injunction, defendant Sarah Vaughan alleged that her contract with the appellants did not give them any right to said exploitation of the recordings of her performance in the production of "Murder, Inc." By reason of said allegation plaintiff did not proceed with this action against Sarah Vaughan. The preliminary injunction granted as to the appellants was conditioned on a bond in the sum of $25,000. Plaintiff did not furnish the required bond and therefore did not avail itself of the injunction *pendente lite.*

On April 19, 1960 defendant Princess Production Corporation by defendant Burt Balaban, its president, entered into a contract with defendant Sarah Vaughan for the rendition of the said two musical compositions in the production of the motion picture "Murder, Inc." There is no evidence that the appellants were informed prior to August 8, 1960 by either defendant Sarah Vaughan or the plaintiff of the contract between plaintiff and defendant Sarah Vaughan dated July 24, 1959. On August 8, 1960 plaintiff wrote to the appellants and informed them of the said contract. Plaintiff knew of the agreement dated April 19, 1960 between the appellants and defendant Sarah Vaughan on the day following the making of said agreement. The phonograph records which are the subject of this action were manufactured and distributed prior to August, 1960.

In support of plaintiff's allegation of knowledge on the part of the appellants of the contract between plaintiff and defendant Sarah Vaughan dated July 24, 1959, plaintiff relies solely upon the publicity thereof reflected in various trade publications. Appellants deny knowledge of said contract on April 19, 1960 and prior to the receipt of the letter of August 8, 1960.

The trial court was requested to find that on and after April 19, 1960 the appellants with full knowledge of plaintiff's rights under its contract with defendant Sarah Vaughan entered into the licensing agreement resulting in the phonograph recordings of the said two musical compositions from the sound track of the motion picture "Murder, Inc." The trial court did not make the finding requested. Instead the trial court found that the said licensing agreement was made by the appellants in violation of plaintiff's rights under its contract with defendant

Sarah Vaughan, "knowledge of which they could or should have had".

On this record the sole basis for recovery against the appellants is the intentional interference with the contractual rights of the plaintiff under the agreement of July 24, 1959, without justification and with knowledge of the contract on the part of the appellants. Plaintiff was required to establish actual knowledge of the underlying agreement on the part of the appellants in order to support a recovery for intentional interference therewith. (*Associated Flour Haulers & Warehousemen* v. *Hoffman,* 282 N. Y. 173, 181; *Reiner* v. *North Amer. Newspaper Alliance,* 259 N. Y. 250, 254–255; *Hornstein* v. *Podwitz,* 254 N. Y. 443, 448; *Campbell* v. *Gates,* 236 N. Y. 457, 460; *Lamb* v. *Cheney & Son,* 227 N. Y. 418, 422; *Thompson Co.* v. *Winchell,* 244 App. Div. 195, 198; *Goodman Bros.* v. *Ashton,* 211 App. Div. 769, 771.)

The trial court did not find and on this record the evidence is insufficient to sustain a finding of actual knowledge on the part of the appellants of the plaintiff's contract with defendant Sarah Vaughan dated July 24, 1959 prior to receipt of the plaintiff's letter dated August 8, 1960. Although proof of actual knowledge may be predicated upon circumstantial evidence, this record does not demonstrate it.

We are also of the opinion that the basis for damages relied on by the plaintiff is too speculative. Plaintiff claimed it was entitled to damages equal to such profits as it would have made if it had sold the quantity of sound track records sold by defendants. Plaintiff was required to prove by a preponderance of the evidence that profits resulted from the phonograph recordings of the sound track of "Murder, Inc." and was also required to advance a reasonable basis for estimating the amount. (Restatement, Torts, § 912, comment d, p. 581 *et seq.*)

The trial court found there were 7,667 of said records of which 1,273 were distributed for promotional purposes. Although the evidence is that the balance of 6,394 was distributed largely on a consignment basis, the award of damages is based upon final sales thereof. The award does not reflect a deduction for payment of $4,800 made by or for the appellants to the musicians' union for the privilege of reproducing the sound track of the instrumentalists who supported the performance of defendant Sarah Vaughan, nor does the award take into consideration that the phonograph records here involved include the recordings of other artists. Moreover, the testimony of plaintiff's witness is that the sale of 7,500 records does not normally serve to return the production costs. The sale of 6,394 records here involved

would not appear to serve to recoup the expenses incident to their production.

The judgment should be reversed, on the law and on the facts, and a new trial directed, with costs to abide the event.

STEUER, J. (dissenting). I dissent and vote to affirm.

The plaintiff had a contract with a singer named Sarah Vaughan for the exclusive right to make and market records of her performance. To obtain the exclusive right, the plaintiff paid her $25,000, in addition to contracting to pay royalties derived from the sale of the records. Miss Vaughan appeared and sang in a motion picture produced by the appellants. No one questions her right to do so or the right of appellants to hire her for that purpose. From the sound track of the motion picture appellants procured a record to be made and distributed by the nonappealing defendants, and defendants have received substantial royalties from that record. Plaintiff sued for an injunction and damages. The trial court granted relief.

The relief of an injunction and damages has been attacked on several grounds. The first attack might be styled mechanical. The record was made not by Miss Vaughan but by a sound track of her voice. The contract provided for '' phonograph records or any reproductions of any kind of the performances by any method now or hereafter known.'' A second contention, that the recording was made for the purposes of exploiting the picture rather than for commercial sales of the record, both legally and factually barely survived announcement of the contention.

There are, however, two contentions that cannot be disposed of so abruptly. The trial court found that before making the record defendants knew, or ought to have known, of the contract between Miss Vaughan and plaintiff. It is claimed that nothing short of actual knowledge will suffice. This is not a precise statement of the law. Let us assume the accuracy of the text writers that there is no liability for negligent interference with contract (1 Harper and Jones, Law of Torts, 509; Prosser, Handbook of the Law of Torts [2d ed.], p. 732 *et seq.*) There is quite a distinction between a negligent failure to know and a deliberate intent to stay in ignorance of what one suspects. It is granted that plaintiff did not prove that defendants actually knew of plaintiff's contract. But it was proved that news of the contract was published in two trade papers, attesting to the general interest of such an occurrence in the milieu in which these people operated. It was also established through the testimony of defendants' own expert that the practice was to

inquire of the performer, before using him to make a record, whether the performer had existing contractual commitments. While it was not proved that defendants did so, it was certainly a reasonable conclusion for the trier of the fact to draw that the failure of the defendants to inquire was due to a desire not to be told. If this is not the equivalent of knowledge, it would seem to be an extremely technical exception in the law, as well as one without any basis in policy.

Lastly, it is said that no damages were proved. The failure to prove damage should not affect the branch of the decision regarding injunction. Defendants' argument that an injunction is needless because it will not make another record is not particularly convincing coming from one who had made a record, and betrays an unusual preoccupation with the reputation of a wrongdoer. That the plaintiff suffered monetary damage is clear, though it may not be possible to establish the extent with certainty. Preliminarily, when one pays a very substantial sum for an exclusive right it seems, at the least, odd to be told that a violation of that right has caused no damage. The award of the court was based on two items: the royalties received by the appellant and the profit made by the manufacturer of the record. These would appear to be unexceptionable items. Perhaps the only way — and certainly the accepted way — of establishing a monetary loss resulting from infringing on proprietary rights is to show what the wrongdoer profited from the venture. Actually defendants do not seriously dispute this. They do claim that only a part of the record was the recorded voice of the singer, the balance being instrumental music. But they cannot and do not dispute that the record was marketed as a song rendition by Sarah Vaughan. Also they claim that the royalties they received were not in fact royalties in that they had to pay out some of them to other parties. What they did with the royalties does not change the character of the receipts. While there are other arguments, these do not merit further statement, as the statements alone prove their refutation. Damages were amply proved according to accepted standards.

The judgment should be affirmed.

VALENTE, J. P., and EAGER, J., concur with McNALLY, J.; STEUER, J., dissents in opinion in which STEVENS, J., concurs.

Judgment reversed upon the law and upon the facts and a new trial ordered, with costs to abide the result of the final judgment in the action.